UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ROUDTHA K. AMINE,

    Debtor.

_____

MOHAMMED ALMANSURI
and NURGUL ALMANSURI,

    Appellants,

v.

ROUDTHA K. AMINE,

    Appellee.

Case No. 19-13479
Honorable Laurie J. Michelson

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S JUDGMENT**

    Nurgul Almansuri and Roudtha Amine were friends. But that changed after Amine and her daughter lived with Almansuri's family for a period of time. After Amine filed for bankruptcy, Almansuri and her husband, Mohammed Almansuri, claimed that Amine stole thousands of dollars of merchandise from their basement. During Amine's bankruptcy proceedings, the Almansuris sought payment for the alleged debt. Following an evidentiary hearing in which the parties and several of their children testified, a bankruptcy court judge found in favor of Amine, and the Almansuris have appealed that decision to this Court.

    The Almansuris' claims have no merit. The Court affirms.

**I.**

    In October 2017, Amine asked Nurgul Almansuri if she and her two minor children could stay in the Almansuris' home for a bit. (ECF No. 3, PageID.21.) The parties dispute how long

Amine and her children stayed with Almansuris: the Almansuris say it was October 8 to October 18, 2017, while Amine says it was October 6 to October 12, 2017. (ECF No. 9, PageID.666–669, 732.) The parties also dispute whether, after that period in October 2017, Amine and her children stayed in the home or if the Almansuris ever saw them again. (*Id.* at PageID.652–653, 774–776.)

About five months later, on March 26, 2018, the Almansuris filed a report of larceny with the Livonia Police Department, listing Amine and Zeinab Makki (her daughter) as suspects. (ECF No. 3, PageID.120.) Mohammed Almansuri stated to the police that the perpetrators took "162 pieces of stolen merchandise total[ing] approximately $6,000." (*Id.* at PageID.124.)

On April 12, 2018, an attorney for the Almansuris wrote to Detective Richard Burg that the "value of the stolen items is approximately $20,000." (*Id.* at PageID.129.) The letter claimed that, among other "precious items," Amine and her daughter stole "legal documents consisting of immigration documents." (*Id.* at PageID.128.) According to the attorney, the Almansuris decided in early March to visit their family in Turkey and discovered that "more than half of the gifts" they had purchased for the trip were missing from their basement storage. (*Id.* at PageID.129.) (In later documents, the Almansuris did not mention missing immigration documents.)

On August 27, the police closed the case and declined to issue a warrant, based on an "inability to prove [the crime] beyond a reasonable doubt." (*Id.* at PageID.126.)

About a month later, the Almansuris filed a civil complaint against Amine in circuit court, alleging that she was liable for conversion, intentional infliction of emotional distress, and unjust enrichment. (*Id.* at PageID.420–424.) This civil case was dismissed in 2019 after the Almansuris learned that Amine had filed for bankruptcy. *See Almansoori [sic] v. Amine,* No. 18-012333-CZ (Wayne Cty. Cir. Ct. dismissed Jan. 22, 2019).

Amine filed for bankruptcy on December 3, 2018. (ECF No. 3, PageID.55–96.) Initially, she did not list any debt to the Almansuris because she was unaware of their allegations. (*Id.*) But in an amendment dated January 3, 2019, she added the Almansuris as creditors with a listed debt of $25,000—the minimum amount in controversy from the civil complaint that was still active. (*Id.* at PageID.103, 421.)

Related to Amine's bankruptcy, on January 22, 2019, the Almansuris initiated an adversary proceeding pursuant to three provisions in a bankruptcy statute providing exceptions for relief from debt based, respectively, on receiving goods or services through false pretenses, embezzlement and larceny, and intentional injury. (*Id.* at PageID.20 (citing 11 U.S.C. § 523(a)(2)(A), (a)(4), (a)(6)).) In that document, the Almansuris alleged that Amine "exploited [their] hospitality by stealing over $35,000.00 worth of [their] furnishings, clothing, jewelry, and belongings during the time she resided at the [Almansuris'] residence." (*Id.* at PageID.21.)

During the bankruptcy proceeding, the court held an evidentiary hearing.  Nurgul claimed to witness two instances of supposed larceny: one on March 9, 2018, when she saw Zeinab Makki running from the Almansuris' walkout basement with a backpack allegedly "stuffed with items she stole from our house"; and another on March 10, 2018, when she saw Amine and Makki near a walk-in closet, where Makki allegedly wore "a very large coat hiding many items that she stole from our house."  (ECF No. 3, PageID.149; ECF No. 9, PageID.794–800.) Nurgul's daughter, Yasmine Almansuri, claimed to have witnessed Amine "carrying three boxes and walking outside the house" on October 13, 2017. (ECF No. 3, PageID.150.) On cross-examination, Yasmine admitted she did not know the contents of the boxes. (ECF No. 9, PageID.882.) Amine denied ever stealing from the Almansuris' home. (*Id.* at PageID.673–676.)

Other details emerged during the evidentiary hearing. Throughout the proceeding, the parties presented differing accounts of how much merchandise was in the basement. For example, one exhibit consisted of receipts of merchandise that totaled approximately $13,000, but almost $1,000 of that merchandise was purchased by a third person and shipped to a different address and some of it was purchased as early as 2015. (ECF No. 3, PageID.281–336.) And during his opening statement, the Almansuris' counsel stated that the missing property was worth $37,000. (ECF No. 9, PageID.625.) The Almansuris provided photographs of several closets and storage areas with boxes and luggage. (ECF No. 3, PageID.338–344.) But Nurgul gave inconsistent testimony on when the photos were taken and claimed she had difficulty understanding certain questions in English. (ECF No. 9, PageID.721–727.) And Amine disputed whether the Almansuri basement was filled with as much merchandise as Nurgul claimed. (*Id.* at PageID.650.) Additionally, Nurgul acknowledged that Amine and her children were far from the only people who had access to the goods—as many as 50 customers per week came into the home, where she worked as a psychic and fortune teller. (*Id.* at PageID.762–763.)

Throughout the evidentiary hearing, the testimony provided cast significant doubt on the credibility of the Almansuris and their allegations. At the conclusion, U.S. Bankruptcy Judge Maria L. Oxholm issued her findings of fact. First, she found that the Almansuris did not have $37,000 of merchandise in their home when Amine and her children lived with them. (*Id.* at PageID.960.) Judge Oxholm determined that the Almansuris "gave no logical explanation of how the value of the 162 items went from $6,000 to $37,000." (*Id.*) She noted that one exhibit showed only $13,000 worth of items, other evidence showed that about $1,000 worth of items was purchased by a third person, and some of the items were purchased years earlier. (*Id.*) And although Nurgul Almansuri testified that she kept realizing more things had been stolen, she consistently

4

said that 162 items were missing. (*Id.*) As a result, the bankruptcy court could not "determine what merchandise was in the home at the time [Amine] lived with the [Almansuris]." (*Id.*)

Second, Judge Oxholm did not find "any credible evidence that [Amine] or her daughter Zeinab stole any of the property from" the Almansuris. (*Id.* at PageID.961.) Although the Almansuris claimed that only Amine and her children had the ability to steal their property, the bankruptcy court found that up to 50 people per week came into the home for business. (*Id.* at PageID.962–963.) Judge Oxholm stated that the outcome "is based entirely on the credibility of the witnesses." (*Id.* at PageID.962.) Whereas Amine was "consistent . . . in her recitation of the events" and was corroborated by her daughter, the Almansuris were "inconsistent in significant details of the facts of this case, especially regarding the value of the property, the dates [Amine] and her children were at the home, and also regarding the testimony about when photos were taken of the basement." (*Id.*) Judge Oxholm also found the Almansuris to be not credible because they claimed a "language barrier excuse only when asked a question that was not favorable to them that they did not want to answer." (*Id.* at PageID.963.)

Based on those facts, Judge Oxholm ruled that the Almansuris failed to prove each § 523 claim and dismissed all three. (ECF No. 3, PageID.41–42; ECF No. 9, PageID.963–968.) The Almansuris filed this appeal on November 25, 2019. (ECF No. 1.)

## II.

### A.

Both parties agree that on appeal of a bankruptcy court decision, the district court must accept the bankruptcy court's findings of fact "unless they are clearly erroneous." Fed. R. Bankr. P. 8013; *In re LTV Steel Co., Inc.*, 560 F.3d 449, 452 (6th Cir. 2009). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court is left with a definite

and firm conviction that a mistake has been committed." *Simon v. Chase Manhattan Bank*, 250 F.3d 1020, 1027 (6th Cir. 2001).

Here, the bankruptcy court made several crucial fact findings. Judge Oxholm found that she could not determine the value of the merchandise, although it was less than $37,000, and that there was no evidence that Amine or her daughter ever stole anything from the Almansuri home. (ECF No. 9, PageID.960–961.) She expressly found that "[Amine] has not taken any of the [Almansuris'] property." (*Id.* at PageID.967.) As will be discussed, this is the beginning and end of the Almansuris' legal claims. And their brief points to no error, let alone "clear" error in these findings. Instead, the Almansuris merely claim that Amine was "not credible" and "not truthful." (ECF No. 7, PageID.575.) But the "bankruptcy court is in the best position to assess the testimony and credibility of witnesses," *In re Jones*, 546 B.R. 12, 19 (B.A.P. 6th Cir. 2016) (citation omitted), and Judge Oxholm found that Amine was more credible than the Almansuris. (ECF No. 9, PageID.962–963.) Because this Court finds no clear error in the determination of credibility or the other factual findings, it will adopt the findings of fact from the bankruptcy court.

## B.

The court reviews conclusions of law de novo. *In re Made in Detroit, Inc.*, 414 F.3d 576, 580 (6th Cir. 2005). One of bankruptcy's central purposes is to provide debtors with a "fresh start" by discharging their debts. *In re Patel*, 565 F.3d 963, 967 (6th Cir. 2009). But statutory exceptions to discharge exist to prevent harm to creditors. *Id*. The Almansuris contend that the bankruptcy court erred in dismissing their adversarial complaint asserting issues of nondischargeability under three subsections of 11 U.S.C. § 523. The Court analyzes each of the three applicable subsections.

**1.**

The Almansuris first claim nondischargeability based on § 523(a)(2)(A), which prevents discharge of debt based on "false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2)(A). The Almansuris can prevail under this provision if they can show, among other things, an "implied misrepresentation or conduct intended to create or foster a false impression." *See In re Korn*, 567 B.R. at 300–01.

The essence of the Almansuris' claim is that Amine's representation that she needed a place to live due to marital problems was "a ruse" in order to "acquire possession of [the Almansuris'] property so she could sell it." (ECF No. 7, PageID.574.) The Almansuris also claim that Amine was "not truthful" and falsely represented to the bankruptcy court that she lacked a business or assets. (*Id.* at PageID.575; ECF No. 9, PageID.634–641.)

Given the facts, the Almansuris have not shown that Amine acquired any of their property under false pretenses. Whether or not Amine had a business or certain assets, it is unclear how that relates to needing to live temporarily at the Almansuris' home. The Almansuris claim that Amine was not truthful—but the bankruptcy court found Amine to be the more credible party. She also found that Amine did not take any of the Almansuris' property, by ruse or otherwise, and determined there was no "implied misrepresentation." Although their brief says that Amine's reason for needing to temporarily reside in the home was false pretense because it was a "charade," that is contrary to the facts found by the bankruptcy court and adopted here. Since the Almansuris give no other legal justification for a claim under § 523(a)(2)(A), they have not proven as a matter of law that this subsection applies.

**2.**

The Almansuris next rely on § 523(a)(4). That section excludes from discharge debts obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" The bankruptcy court held that this subsection did not apply.

On appeal, the Almansuris' brief states: "While Appellee was not a fiduciary, she did embezzle the personal property of Appellant." (ECF No. 7, PageID.575.) But that conclusory statement is not an argument. And "[f]ailure to raise an argument in an appellate brief waives the argument on appeal." *Rees v. W.M. Barr & Company, Inc.*, 736 F. App'x 119, 124 (6th Cir. 2018) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005)). Thus, the Almansuris have admitted no fiduciary relationship and forfeited their § 523(a)(4) argument based on embezzlement**.**

That leaves only larceny: "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *In re Noblit*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005). Again the bankruptcy court, in its findings of fact, determined that "there was [no] credible evidence that [Amine] or her daughter Zeinab stole any of the property from [the Almansuris]." (ECF No. 9, PageID.961.) Although the Almansuris cited receipts, bank statements, and photographs, the bankruptcy court found these to be unclear and not definitive in proving that Amine or her daughter stole anything. (*Id.* at PageID.954, 960–961.) Also, because of Nurgul's business as a psychic and fortune teller, the bankruptcy court reasoned that up to 50 people per week had access to the Almansuri home and, by extension, the possessions they claimed were missing**.** (*Id.* at PageID.962–963.) This Court cannot say that those factual determinations are clearly erroneous.

The Almansuris do not make a legal argument about larceny, choosing instead to relitigate the facts. Their brief says: "It is without question that Appellee committed a larceny against Appellants. The taking of Appellants' property was unlawful. . . . Here, Appellee took several thousand dollars' worth of property belonging to Appellants. The damage to Appellants totaled $35,000.00." (ECF No. 7, PageID.575–576.) But the Almansuris have not proven a taking, and without proving a taking, they cannot prove larceny. So this claim also fails as a matter of law.

**3.**

Finally, the Almansuris seek relief under § 523(a)(6). That section excludes from discharge debts obtained by "willful and malicious injury by the debtor to another entity or to the property of another entity." "Willful and malicious injury" occurs, in the dischargeability exception context, "only when [the] debtor (1) desires to cause the consequences of his act, or (2) believes those consequences are substantially certain to result from it." *In re Bradley*, 507 B.R. 192, 201 (6th Cir. B.A.P. 2014). According to the Almansuris' brief, this requisite injury is the loss of "property [from the] basement worth thousands of dollars." (ECF No. 7, PageID.576.) But again, the allegation that Amine stole property from the Almansuris' basement is contrary to the bankruptcy court's factual findings, which this Court has no reason to find are clearly erroneous.

And even if the Almansuris had proved injury, they would still need to prove that the injury was "deliberate or intentional" and "not merely a deliberate or intentional *act* that leads to injury." *See Kawaahau v. Geiger*, 523 U.S. 57, 61 (1998). They failed to do so. They do not argue that Amine intended to cause the consequences of the act, only that "[her] conduct was willful." (ECF No. 7, PageID.576.) So this claim also fails as a matter of law.

## III.

Accordingly, the Almansuris have not shown that the bankruptcy court committed any reversible error. Thus, this Court AFFIRMS the dismissal of all counts.

SO ORDERED.

Dated: July 30, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
